## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| REINKE MANUFACTURING COMPANY, INC., | ) ) ) | CASE NO. 4:15-cv-03072 |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| BARKSDALE, INC. d/b/a BARKSDALE CONTROL PRODUCTS, | ) ) ) | |
| Defendant. | ) | |

## PLAINTIFF'S BRIEF IN OPPOSITION OF DEFENDANT'S MOTION TO TRANSFER

WOODS & AITKEN LLP
Paul M. Schudel, No. 13723
Todd W. Weidemann, No. 20505
Ryan A. Kehm, No. 25121
301 South 13th Street, Suite 500
Lincoln, Nebraska 68508
Telephone:  402-898-7400
Facsimile:   402- 898-7401
pschudel@woodsaitken.com
tweidemann@woodsaitken.com
rkehm@woodsaitken.com

*Attorneys for Reinke Manufacturing
Company, Inc., Plaintiff*

# TABLE OF CONTENTS

FACTUAL BACKGROUND.................................................................................1

ARGUMENT SUMMARY ...............................................................................4

ARGUMENT ....................................................................................................6

I.      NEBRASKA LAW APPLIES TO THIS DISPUTE. ............................6

II.     BARKSDALE'S STANDARD CONDITIONS OF SALE,
        INCLUDING THE FORUM SELECTION CLAUSE, ARE NOT
        APPLICABLE IN THIS LAWSUIT........................................................7

        A.      Gexpro's Terms and Conditions of Purchase Are the Complete
                and Exclusive Terms for Gexpro's Purchase of the Switches
                from Barksdale, and Gexpro's Terms and Conditions of Sale
                Set Forth the Terms for Gexpro's Sale of the Switches to
                Reinke...............................................................................................7

        B.      Barksdale's Standard Conditions of Sale Did Not Become Part
                of the Parties' Agreement under the Uniform Commercial
                Code...................................................................................................9

                i.      Barksdale Accepted Gexpro's Purchase Under U.C.C. §
                        2-207(1)...............................................................................11

                ii.     U.C.C. § 2-207(2)(a) and § 2-207(2)(b) Each Prevent the
                        Forum Selection Clause from Becoming Part of the
                        Contract Because Gexpro's Terms and Conditions of
                        Purchase Limits Acceptance to its Terms and
                        Conditions and the Forum Selection Clause Would
                        Materially Alter the Contract. ............................................15

                iii.    Even if Barksdale's Acceptance was Expressly
                        Conditional on Gexpro's Assent to Barksdale's
                        Standard Conditions of Sale under § 2-207(1), the
                        Forum Selection Clause Still Did Not Become Part of
                        the Contract Because The Writings Do Not Agree On
                        That Clause And Gexpro Never Assented to Such
                        Terms. ..................................................................................19

III.    IF THE COURT FINDS THAT BARKSDALE'S STANDARD
        CONDITIONS OF SALE MAY BE PART OF THE PARTIES'
        AGREEMENT, THE COURT SHOULD NOT MAKE FACTUAL
        FINDINGS AT THIS JUNCTURE TO DETERMINE IF THE
        FORUM SELECTION CLAUSE IS APPLICABLE. ..................................21

i

**IV.   BARKSDALE HAS FAILED TO SUSTAIN ITS BURDEN OF PROVING THAT CALIFORNIA WOULD BE A *MORE* CONVENIENT FORUM THAN NEBRASKA FOR THE PARTIES, THE WITNESSES, AND IN THE INTERESTS OF JUSTICE.** ...............................25

**CONCLUSION** ....................................................................................................31

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Century Products Co.*, 943 F. Supp. 137 (D.N.H. 1996)..........................................34

*C. Itoh & Co. (America) v. Jordan Int'l Co.*, 552 F.2d 1228 (7th Cir. 1977)............24, 31, 32, 33

*Compass Auto. Group., LLC v. Denso Mfg. Tennessee, Inc.*, No. 12-10919, 2013 WL 655112 (E.D. Mich. Feb. 22, 2013) .................................................................................................20

*Construction Resource Group, Inc. v. General Technologies., Inc.,* No. 7:13–1695–TMC, 2013 WL 6284003 (D.S.C. Dec.4, 2013) .....................................................................................22, 23

*Diamond Fruit Growers, Inc. v. Krack Corp.*, 794 F.2d 1440 (9th Cir. 1986) ...........................24

*Dorton v. Collins & Aikman Corp.,* 453 F.2d 1161 (6th Cir.1972) ...........................14, 15, 16, 21

*Duro Textiles, LLC v. Sunbelt Corp.,* No. 13–10927–MLW, 2014 WL 1338149 (D.Mass. Mar. 31, 2014) .................................................................................................................................21

*Egan Mach. Co. v. Mobil Chem. Co.*, 660 F. Supp. 35 (D. Conn. 1986) ..............................passim

*Galaxy Int'l, Inc. v. White Stores, Inc.*, 88 F.R.D. 311 (W.D. Pa. 1980).....................................21

*General Instrument Corp. v. Tie Mfg., Inc.*, 517 F.Supp. 1231 (S.D.N.Y. 1981) .................20, 36

*Insteel Wire Products Co. v. Dywidag Sys. Int'l USA, Inc.*, No. 1:07CV641, 2009 WL 2253198 (M.D.N.C. July 28, 2009) ..............................................................................................20

*John T. Jones Const. Co. v. Hoot Gen. Constr. Co., Inc.*, 613 F.3d 778 (8th Cir. 2010) ...............6

*JOM, Inc. v. Adell Plastics, Inc.*, 193 F.3d 47 (1st Cir. 1999).....................................................25

*Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).................6

*Lively v. IJAM, Inc.*, 2005 OK CIV APP 29, 114 P.3d 487 (Okla. Ct. App. 2005).....................22

*Lockheed Electronics Co. v. Keronix, Inc.*, 114 Cal. App. 3d 304, 170 Cal. Rptr. 591, 30 U.C.C. Rep. Serv. 827 (2d Dist. 1981) ...............................................................................................19

*Mertz v. Pharmacists Mut. Ins. Co.*, 625 N.W.2d 197 (Neb. 2001) ...............................................6

*Michels Corp., v. Resitech Indus., LLC*, 15-C-0535 (D. Wis. Aug. 19, 2015) .............................29

*Neb. Plastics, Inc. v. Holland Colors Americas, Inc.*, No. 4:01CV603, 2002 WL 1477635 (D. Neb. July 10, 2002).......................................................................................................8, 30

*Nebraska Mach. Co. v. Cargotec Solutions, LLC*, 762 F.3d 737 (8th Cir. 2014)............. 26, 27, 28

*Pax, Inc. v. Veolia Water N. Am. Operating Servs., Inc.*, 347 F. Supp. 2d 281 (W.D. Va. 2004) 30

*PCS Nitrogen Fertilizer, L.P. v. Christy Refractories, L.L.C.*, 225 F.3d 974 (8th Cir. 2000)...... 24

*Prod. Comp'ts., Inc. v. Regency Door & Hardware, Inc.*, 568 F. Supp. 651 (S.D. Ind. 1983).... 21

*Ralph Shrader, Inc. v. Diamond Int'l Corp.*, 833 F.2d 1210 (6th Cir. 1987) ............................. 24

*Reaction Molding Technologies v. General Electric Co.*, 588 F.Supp. 1280 (E.D.Pa.1984) 14, 15, 16, 17

*Rolscreen Co. v. Pella Products of St. Louis, Inc.*, 64 F.3d 1202 (8th Cir. 1995)........................ 35

*Royal Ins. Co. of Am. v. Duhamel Broad. Enterprises*, No. 8:02 CV 577, 2004 WL 1368868 (D. Neb. June 16, 2004) .................................................................................................................... 7

*Saint Francis Home Med. Equip., L.L.C. v. Sunrise Med. HHG, Inc.*, Civ. No. 08-224-TCK-PJC, 2009 WL 2461327 (N.D. Okla. August 10, 2009)............................................................. 22

*Steiner v. Mobil Oil Corp.*, 20 Cal. 3d 90, 141 Cal. Rptr. 157, 569 P.2d 751, 22 U.C.C. Rep. Serv. 865 (1977).................................................................................................................... 17

*Terra Intern., Inc. v. Mississippi Chemical Corp.*, 119 F.3d 688 (8th Cir. 1997) ....................... 30

*Tra Indus., Inc. v. Valspar Corp.*, Civ. No. 10-026-JLQ, 2010 WL 2854251 (E.D. Wash. July 19, 2010) ......................................................................................................................................... 21

*TRE Servs., Inc. v. U.S. Bellows, Inc.*, Civ. No. 12-00663, 2012 WL 2872830 (W.D. Pa. July 12, 2012) ......................................................................................................................................... 21

*Tri-State Petroleum Corp. v. Saber Energy Inc.*, 845 F.2d 575 (5th Cir. 1988).......................... 19

*Valmont Indus., Inc. v. Mitsui & Co. (U.S.A.)*, 419 F.Supp. 1238 (D. Neb. 1976)....................... 28

**8**

28 U.S.C. § 1404(a) .................................................................................................... 24, 25, 26

Restatement (Second) of Conflict of Laws § 191 (1971) ................................................................ 6

Restatement (Second) of Conflicts of Law § 188(1) (1971)............................................................ 6

U.C.C. § 2-207 ............................................................................................................................ passim

U.C.C. § 2-207(1) ....................................................................................................................... passim

U.C.C. § 2-207(2) ....................................................................................................................... passim

U.C.C. § 2-207(3) ........................................................................................ 5, 10, 20, 21

COMES NOW Plaintiff, Reinke Manufacturing Company, Inc. ("Reinke"), by and through its undersigned counsel, and respectfully submits this Brief in Opposition of Defendant Barksdale, Inc.'s d/b/a Barksdale Control Products ("Barksdale") Motion to Transfer.

## FACTUAL BACKGROUND

This lawsuit arises from Barksdale's failure to reimburse Reinke for the costs incurred in Barksdale's recall of defective pressures switches known as Barksdale Econ-O-Trol switches ("Switches").  (Roth Decl. ¶ 4).  Reinke had incorporated these Switches into its manufactured irrigation systems, which were sold worldwide.  (Compl. ¶ 8).

Gexpro purchased these Switches from Barksdale after receiving orders from Reinke for the Switches.  (Schlutz Decl. ¶¶ 10, 15).  The Gexpro sales personnel responsible for the sales of the Switches to Reinke were located in Gexpro's Omaha, Nebraska Branch office. (Schlutz Decl. ¶ 14).  The orders by Reinke for the Switches were originated from Reinke's offices in Nebraska to Gexpro's Omaha, Nebraska Branch Office.  (Schlutz Decl. ¶ 15).  The orders placed by Gexpro to Barksdale for the Switches were initiated by the Gexpro Omaha, Nebraska Branch Office and were executed by Gexpro' sourcing organization located in Gexpro's Crown Point, Indiana Branch Office.  (Schlutz Decl. ¶ 16).  In connection and included with and as an integral part of such orders, Gexpro issued its Terms & Conditions of Purchase (Rev. October 2007) ("Gexpro's Terms and Conditions of Purchase") to Barksdale.  (Schlutz Decl. ¶ 10, Ex. A).

In the agreement for the purchase and sale of the Switches between Gexpro and Barksdale, Barksdale warranted that that the Switches would "be free from defects in material, workmanship and title, and [would] conform to the requirements of [Gexpro's Terms and Conditions of Purchase] for a period of at least twelve (12) months from the date of shipment to the ultimate customer."  (Schlutz Decl. ¶ 10, Ex. A (¶ 7)).  Barksdale further impliedly warranted

1

that the Switches were free of defects, were merchantable, and were fit for the ordinary purpose for which the Switches are used.

After receiving delivery of the Switches from Barksdale pursuant to orders placed to Barksdale from Gexpro's Omaha Branch Office, Gexpro sold these Switches to Reinke. (Schlutz Decl. ¶¶ 7, 15 and 11; Compl. ¶ 6).  In the sale of the Switches from Gexpro to Reinke, Gexpro included its "Seller's Terms and Conditions of Sale – Rev. August 2009" ("Gexpro's Terms and Conditions of Sale").  (Schlutz Decl. ¶ 11, Ex. B).  Among the terms included in Gexpro's Terms and Conditions of Sale was an assignment to Reinke of all warranties and remedies provided to Gexpro by Barksdale.  (Schlutz Decl. ¶ 11, Ex. B (¶ 13(b)), ¶ 13; Compl. ¶13).  This pass through of the warranties of Barksdale, the manufacturer of the Switches, to Gexpro's customer, Reinke, was and is consistent with Gexpro's practice of not issuing independent product warranties of any kind related to the sales of goods by Gexpro to its customers.  Rather, all warranties provided by the vendor/manufacturer which sells good to Gexpro are passed through or extended to Gexpro's customers such as Reinke. (Schlutz Decl. ¶¶ 12-13, Ex. B (¶ 13(b)).

On September 24, 2012, Barksdale sent to Gexpro and Gexpro forwarded to Reinke an "Interim Corrective Action Report", stating that Barksdale was investigating the Switches because cracks were appearing along the rim of a plastic knob that is a component of each of the Switches.  (Roth Decl. ¶ 5, Ex. A).  A few weeks later, Reinke received an updated Barksdale Corrective Action Report, dated October 16, 2012, which contained a "Root Cause" section placing the fault for the cracking knobs that are components of the Switches on the knob/plastic supplier.  (Roth Decl. ¶ 6, Ex. B).

On December 5, 2012, Reinke received an "Important Product Notification" alerting Reinke that "[a] small percentage of the Barksdale Econ-O-Trol Switch product has exhibited cracked knobs over the last few months" and that if the knob is missing or exhibits a large crack, "[o]perator is exposed to full line voltage." (Roth Decl. ¶ 7, Ex. C; Compl. ¶ 7). The Barksdale Notification required Reinke to return the defective Switches to Barksdale for replacement. (*Id.*). The life-threatening risk necessitating this recall was the potential exposure of operators of the Switches to full line voltage and electrical shock which could result in serious injury or death, particularly to a user of a Reinke irrigation system that may be exposed to the electric shock while operating in wet terrain. (Compl. ¶ 9; Roth Decl. Ex. E).

Following receipt of the December 5, 2012 Notification, on December 13, 2012, Barksdale representative, Jeremy Smith, traveled to the Corporate Headquarters of Reinke located in Deshler, Nebraska to meet with Reinke personnel to discuss the potential severity and remediation of the safety risks posed by the defective Switches. (Roth Decl. ¶ 8; Compl. ¶ 9). All Reinke personnel who participated in this meeting reside in Nebraska and either are or were employed at Reinke's corporate offices located in Deshler, Nebraska. (Roth Decl. ¶¶ 10-12). At this meeting, the defects in the Switches were discussed and acknowledged by Barksdale, and a recovery plan to recall and replace the defective Switches was formulated. (*Id.*).

Due to the life-threatening risk presented by the defective Switches, in accordance with its positions presented at the December 2012 meeting, Reinke undertook efforts to replace the defective Switches and protect end user operators and discharge or reduce potential liability of Barksdale for placing the defective Switches in the stream of commerce notwithstanding the significant defects therein. (Compl. ¶ 18).

3

As of March 31, 2015, Reinke had completed replacement of 94.5% of the defective Switches associated with irrigation systems installed in the United States and had incurred a total of $847,261.90 as a result of replacing Barksdale's defective Switches.  (Compl. ¶ 20).  Reinke personnel with knowledge of the processes for replacement of the Switches and the costs relating thereto reside in Nebraska and are employed at Reinke's corporate offices located in Deshler, Nebraska.  (Roth Decl. ¶¶ 10-12).  Also, all of Reinke's records relating to this matter, including the costs of replacement of the Switches are maintained at Reinke's corporate offices located in Deshler, Nebraska.

With the exception of sending new Switches to replace the defective Switches, Barksdale has failed and refused to reimburse Reinke for any of the costs which it has or will incur in replacing the defective Switches.  (Compl. ¶ 21).  As a result, Reinke brought this lawsuit to recover the costs which it has directly incurred as a result of Barksdale placing the defective Switches into the stream of commerce.

## ARGUMENT SUMMARY

I.     Nebraska law applies because the Switches were delivered to and the material information and conduct at issue in this lawsuit occurred in Nebraska.

II.    "Barksdale's Standard Conditions of Sale" (Fuehr Decl. ¶ 12; Exhibit B) were not part of the parties' agreement and are not applicable in this lawsuit.

     a.  Gexpro's Terms and Conditions of Purchase were the complete and exclusive terms for the purchase and sale of the Switches by Gexpro from Barksdale.

     b.  If the Court applies a Uniform Commercial Code analysis, Barksdale's Standard Conditions of Sale did not become part of the parties' agreement.

        i.  Barksdale accepted Gexpro's purchase order under U.C.C. § 2-207(1).

4

    ii.   Both subsection (a) and subsection (b) of § 2-207(2) prevent the forum selection clause from becoming part of the contract because Gexpro's Terms and Conditions of Purchase "expressly limits acceptance to the terms of the offer" and because the forum selection clause would "materially alter" the agreement.

    iii.   Even if this Court finds that U.C.C. § 2-207(2) does not apply because Barksdale's acceptance of Gexpro's order was "expressly made conditional on [Gexpro's] assent to the additional or different terms" in Barksdale's Standard Conditions of Sale under § 2-207(1), then the forum selection clause continues to be inapplicable pursuant to U.C.C. § 2-207(3) because the parties' writings do not agree on a forum selection clause and Gexpro did not expressly assent to Barksdale's Standard Conditions of Sale in the purchase of the Switches.

III.   If this Court finds that Barksdale's Standard Conditions of Sale may have been part of the parties' agreement, then Barksdale's Motion to Transfer should still be denied because there are factual determinations that need to be made regarding the contents and formation of the contract.  As these determinations go to the merits of the case, the Court should not make these determinations at this juncture.

IV.   Barksdale's Motion to Transfer should be denied because Barksdale has failed to carry its burden of demonstrating that California would be a more convenient forum than Nebraska for the parties, the witnesses, and in the interests of justice

and Gexpro's Terms and Conditions of Sale provided the terms for the sale of the Switches by Gexpro to Reinke.

## ARGUMENT

### I.    NEBRASKA LAW APPLIES TO THIS DISPUTE.

Application of Nebraska's conflicts of law analysis demonstrates that Nebraska law should be applied in this dispute.  In determining the choice of law question, this Court should apply the choice-of-law rules of the forum state, Nebraska.  *Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941) (determining that a federal court sitting in diversity must apply the conflict of law provision adopted by the state in which the federal court sits); *John T. Jones Const. Co. v. Hoot Gen. Constr. Co., Inc.*, 613 F.3d 778, 782 (8th Cir. 2010) ("We apply the choice-of-law rules of the forum state in a diversity action.").

Nebraska has adopted the Restatement (Second) of Conflicts of Laws "most significant relationship" test to address choice of law questions to resolve disputes involving contracts. *Mertz v. Pharmacists Mut. Ins. Co.*, 625 N.W.2d 197, 202 (Neb. 2001).  The Restatement, provides, in relevant part that "[t]he rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties…"  *See Royal Ins. Co. of Am. v. Duhamel Broad. Enterprises*, No. 8:02 CV 577, 2004 WL 1368868, at *2 (D. Neb. June 16, 2004) (citing Restatement (Second) of Conflicts of Law § 188(1) (1971)).

In a contract for the sale of goods, the most significant factor is the place of delivery.  *See* Restatement (Second) of Conflict of Laws § 191 (1971) ("The validity of a contract for the sale of an interest in a chattel and the rights created thereby are determined ... by the local law of the state where under the terms of the contract the seller is to deliver the chattel unless, with respect

to the particular issue, some other state has a more significant relationship ... to the transaction and the parties....").

The orders placed by Reinke to Gexpro for the Switches were originated from Reinke's offices in Deshler, Nebraska to Gexpro's Omaha, Nebraska Branch Office.  (Schlutz Decl. ¶ 15). The orders placed by Gexpro to Barksdale for the Switches were originated by Gexpro to Barksdale from Gexpro's Omaha, Nebraska Branch Office.  (Schlutz Decl. ¶ 16).  Barksdale shipped the Switches to Gexpro in Nebraska.  (Fuehr Decl. ¶14).  After receiving the Switches from Gexpro, the Switches were incorporated into Reinke's manufactured irrigation systems in Deshler, Nebraska.  (Roth Decl. ¶ 4; Compl. ¶ 8).  Moreover, as described further below, the material information and conduct at issue in this lawsuit occurred in Nebraska.  Accordingly, Nebraska substantive law should apply in this dispute.  *See Neb. Plastics, Inc. v. Holland Colors Americas, Inc.*, No. 4:01CV603, 2002 WL 1477635, at *6 (D. Neb. July 10, 2002) (Finding that the application of Nebraska law was appropriate as the contract required the goods at issue to be delivered in Nebraska).

## II.   BARKSDALE'S STANDARD CONDITIONS OF SALE, INCLUDING THE FORUM SELECTION CLAUSE, ARE NOT APPLICABLE IN THIS LAWSUIT.

Barksdale alleges that this matter should be transferred to the Central District of California due to a forum selection clause contained in Barksdale's Standard Conditions of Sale. Contrary to Barksdale's allegations, Barksdale's Standard Conditions of Sale were not part of the agreement between Gexpro and Barksdale and are not relevant to this lawsuit.

### A.   Gexpro's Terms and Conditions of Purchase Are the Complete and Exclusive Terms for Gexpro's Purchase of the Switches from Barksdale, and Gexpro's Terms and Conditions of Sale Set Forth the Terms for Gexpro's Sale of the Switches to Reinke.

In its Complaint, Reinke pled the following facts regarding the warranties that Barksdale's provided for the Switches:

13.    Included among the terms of purchase of the Switches by Reinke from Gexpro,

was a provision that assigned to Reinke all warranties and remedies provided to

Gexpro by Barksdale with regard to the Switches.

14.    Barksdale warranted to Gexpro that the Switches would be free from defects in

material, workmanship and title, and would conform to the requirements of

Gexpro's order for a period of at least twelve (12) months from the date of

shipment to the ultimate customer.  Barksdale further impliedly warranted that the

Switches were free of defects, were merchantable, and were fit for the ordinary

purpose for which the Switches are used.

(Compl. ¶¶ 13-14).

The assignment of warranties and remedies referenced in paragraph 13 of the Complaint

comes from paragraph 13(b) of Gexpro's Terms and Conditions of Sale.  (Schlutz Decl. ¶ 11, Ex.

B (¶ 13(b)), ¶ 13).  Under paragraph 13(b):

[BARKSDALE'S] WARRANTIES: [Gexpro] shall also assign to [Reinke] any

[Barksdale] warranties and/or remedies provided to [Gexpro] by [Barksdale].

(Schlutz Decl. ¶ 11, Ex. B (¶ 13(b))).

The warranties referenced in paragraph 14 of Reinke's Complaint and assigned under paragraph

13(b) are set forth in Gexpro's Terms and Conditions of Purchase with Barksdale.  (Schlutz

Decl. ¶ 10, Ex. A).

The evidence shows that Gexpro's purchase of the Switches from Barksdale was made

subject to Gexpro's Terms and Conditions of Purchase.  (Schlutz Decl. ¶ 10, Ex. A).  Pursuant to

the specific terms of Gexpro's Terms and Conditions of Purchase, that document provides the

complete and exclusive terms for Gexpro's purchase of the Switches from Barksdale:

This document contains the complete and exclusive statement of the terms of the agreement between [Gexpro] and [Barksdale]. It supersedes all previous requests, quotations or oral agreements.  If Seller accepts this Purchase Order ("Order") or provides any items listed in the Order, Seller is deemed to have agreed to these conditions. Any additional or different terms will not be part of the Order unless acknowledged in writing and signed by an authorized representative of [Gexpro].

(Schlutz Decl. ¶ 10, Ex. A (¶1)).

There is no evidence that any of Barksdale's additional or different terms were "acknowledged in writing and signed by an authorized representative of [Gexpro]". Accordingly, Barksdale's Standard Conditions of Sale, and specifically the forum selection clause contained therein, are not part of the parties' agreement and are not applicable to this lawsuit.  Therefore, the Motion to Transfer based upon Barksdale's forum selection clause should be denied.

**B.    Barksdale's Standard Conditions of Sale Did Not Become Part of the Parties' Agreement under the Uniform Commercial Code.**

Notwithstanding Reinke's position that Gexpro's Terms and Conditions of Purchase were the complete and exclusive terms of the agreement, if the Court applies the Uniform Commercial Code to determine if Barksdale's Standard Conditions of Sale are applicable, the Motion to Transfer should still be denied because an analysis under U.C.C. § 2-207 demonstrates that the forum selection clause was not part of the parties' agreement.  Under Nebraska U.C.C. § 2-207:

(1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.

9

(2) The additional terms are to be construed as proposals for addition to the
contract. Between merchants such terms become part of the contract unless:

    (a) the offer expressly limits acceptance to the terms of the offer;

    (b) they materially alter it; or

    (c) notification of objection to them has already been given or is given
    within a reasonable time after notice of them is received.

(3) Conduct by both parties which recognizes the existence of a contract is
sufficient to establish a contract for sale although the writings of the parties do not
otherwise establish a contract.  In such case the terms of the particular contract
consist of those terms on which the writings of the parties agree, together with
any supplementary terms incorporated under any other provisions of the Uniform
Commercial Code.

Neb. U.C.C. § 2-207.

    In this case, the record shows that in connection and included with and as an integral part
of Gexpro's purchase of the Switches, Gexpro included Gexpro's Terms and Conditions of
Purchase.  (Schlutz Decl. ¶ 10, Ex. A).  In the Declaration of Ralf Fuehr, Barksdale contends that
"[o]n or about February 1, 2011, at the outset of the relationship…Barksdale provided Gexpro
with its General Sales Policies" which state that "all orders are subject to the Standard
Conditions of Sale."  (Fuehr Decl. ¶ 5).

    Notwithstanding the absence of any evidence that Barksdale ever actually provided
"Barksdale's Standard Conditions of Sale" to Gexpro or that Gexpro ever acknowledged or
assented to any additional terms, if Barksdale's "order acknowledgment form" is deemed to have
made Barksdale's acceptance expressly conditional on assent to any additional or different terms,
then § 2-207(3) will govern the terms of the parties' agreement; otherwise § 2-207(2) will apply.
As explained below, under either scenario, the forum selection clause was not part of the parties'
agreement.

### i.   Barksdale Accepted Gexpro's Purchase Under U.C.C. § 2-207(1).

The record before this Court shows that Barksdale accepted Gexpro's offer to purchase subject to Gexpro's Terms and Conditions of Purchase.  Under paragraph 1 of Gexpro's Terms and Conditions of Purchase:

> If [Barksdale] accepts this Purchase Order ("Order") or provides any items listed in the Order, [Barksdale] is deemed to have agreed to these conditions.

(Schlutz Decl. ¶ 10, Ex. A (¶ 1)).

In accordance with the foregoing, upon Barksdale's receipt of the purchase order and Gexpro's Terms and Conditions of Purchase, Barksdale did not object to or amend these terms and conditions.  Instead, the Declaration of Ralf Fuehr only contains a general allegation that Barksdale acknowledged Gexpro's orders and shipped the Switches to Gexpro after sending an "order acknowledgment form [stating] that the order was acknowledged subject to Barksdale's standard conditions of sale."  (Fuehr Decl. ¶¶ 11, 14).  Contrary to Fuehr's statement that the provision of Barksdale's General Sales Policies occurred "[o]n or about February 1, 2011, at the outset of the relationship [between Gexpro and Barksdale]" (Fuehr Decl. ¶ 5), Gexpro's predecessor, GE Supply, had a business relationship with Gexpro prior to July 2006, and Gexpro continued to purchase goods from Barksdale thereafter.  (Schlutz Decl. ¶¶ 4-9).  Even assuming the Barksdale Standard Conditions of Sale were provided at some point in time, Barksdale's response, at best, constitutes an acceptance of Gexpro's purchase order under § 2-207(1), rather than a finding that Barksdale's acceptance was "expressly made conditional on assent to the additional or different terms." (Neb. U.C.C. § 2-207(1)).

While not addressed in Barksdale's Memorandum in Support of its Motion to Transfer, Barksdale will likely argue that the following language from Barksdale's Standard Conditions of Sale made the acceptance of Gexpro's purchase order "expressly conditional":

> All of the above provisions, together with those set forth in the Barksdale form to which this is annexed, and such others as may be accepted by Barksdale in writing, all of which are accepted by Purchaser and supersede Purchase's order form, if any, shall be and constitute the entire agreement for the sale of the Projects. Any terms and conditions in any writing pertaining to the sale of the Products irrespective of its wording or of when received by Barksdale which are inconsistent with, or add to, the terms and conditions hereof, will not be acceptable or become a part of the contract without Barksdale's written consent signed by its dully authorized representative…

(Fuehr Decl. ¶ 6, Ex. B (¶ 13)).

This clause fails to explicitly declare Barksdale's unwillingness to proceed with the contract unless its terms and conditions were accepted by Gexpro.  Accordingly, Barksdale's response constituted an acceptance of Gexpro's purchase order under § 2-207(1).

In *Egan Mach. Co. v. Mobil Chem. Co.*, 660 F. Supp. 35, 36 (D. Conn. 1986), the Court decided a motion for summary judgment considering a similar boilerplate clause.  In that case, the purchase order contained certain terms and conditions, but did not include an indemnification provision.  *Egan Mach. Co.*, 660 F. Supp. at 36.  Upon receipt of the order, the seller submitted an order acknowledgment, which contained an indemnification provision, and provided that, "This order is accepted on the condition that our Standard Conditions of Sale, which are attached hereto and made a part hereof, are accepted by you, notwithstanding any modifying or additive conditions contained on your purchase order. Receipt of this acknowledgment by you without

12

prompt written objection thereto shall constitute an acceptance of these terms and conditions." *Id*. After an injury occurred and a lawsuit was filed, the buyer argued that the indemnification provision was not a part of the parties' contract because the seller "failed to explicitly declare its unwillingness to proceed with the contract unless its conditions, including the indemnity provision, were accepted." *Id*. at 37. In holding that the indemnity provision did not become a term of the contract, the Court stated:

> Courts have required that clauses such as the one here be strictly construed. *Reaction Molding Technologies v. General Electric Co.,* 588 F.Supp. 1280, 1288 (E.D.Pa.1984). The conditional acceptance clause will convert an acceptance into a counteroffer only where the offeree clearly reveals its unwillingness to proceed with the transaction unless it is assured of the offeror's assent to additional or different terms. *Dorton v. Collins & Aikman Corp.,* 453 F.2d 1161, 1168 (6th Cir.1972). This the plaintiff's clause did not do. The plaintiff's clause here falls short of creating a conditional acceptance partly because it fails to declare in clear terms the plaintiff's unwillingness to go forward unless its additional different terms are assented to by the defendant. Instead, the clause speaks in generalities, using limiting rather than conditional language. *Reaction Molding, supra,* 588 F.Supp. at 1258, presuming the defendant's acceptance of its Standard Conditions at Sale unless the defendant responded with prompt written objection. This is not enough. The focus of § 2–207(1) is on explicit, not implicit, statements of intent. *See Dorton, supra,* 453 F.2d at 1168.

*Egan Mach. Co. v. Mobil Chem. Co.*, 660 F. Supp. at 37-38.

As referenced above, in *Dorton v. Collins & Aikman Corp.*, 453 F.2d 1161, 1167 (6th Cir.1972), the court held that the conditional language of § 2-207(1) did apply to a contract term

that stated that acceptance was "subject to all of the terms and conditions on the face and reverse side hereof, including arbitration, all of which are accepted by the buyer."  In holding that the acceptances were not expressly conditional on the buyer's assent, the Court stated:

> Although [Seller]'s use of the words "subject to" suggests that the acceptances were conditional to some extent, we do not believe the acceptances were "expressly made conditional on [the buyer's] assent to the additional or different terms," as specifically required under the Subsection 2-207(1) proviso. In order to fall within this proviso, it is not enough that an acceptance is expressly conditional on additional or different terms; rather, an acceptance must be expressly conditional on the offeror's assent to those terms.

*Dorton v. Collins & Aikman Corp.*, 453 F.2d at 1168.

In the case of *Reaction Molding Technologies, Inc. v. General Elec. Co.*, 588 F.Supp. 1280, 1288-1289, 38 U.C.C. Rep. Serv. 1537 (E.D.Pa. 1984), while finding that the purchase order was a "seasonable expression of acceptance" under § 2-207(1), requiring application of § 2-207(2), the Court noted the following from 2 W. Hawkland, UCC Series § 2-207:02 at 103-104:

> In his Uniform Commercial Code Series, William Hawkland states that in order to fit within the proviso of § 2-207, the qualifying language "must be stated in such a place, manner and language that the offeror will understand in the commercial setting of the transaction that no acceptance has occurred ..." Hawkland further explains:  "[T]he response of the offeree operates as an acceptance if a reasonable man in the position of the offeror would assume that an agreement had been made despite differences in the exchanged forms. In this connection, reasonable belief that the contract has been made must take into account the words that were used by the offeree, where they appeared in

his form, whether they were printed, typed or handwritten, along with the total

commercial setting of the transaction, including course of dealing and usage of trade. In

case of doubt, the court ought to decide in favor of the existence of a contract because

chances are good that both parties intended to create one when they exchanged their

forms, and, moreover, the ambiguities of the offeree's purported acceptance ought to be

resolved against him in close cases ..." *Id*. at 103-104. (Citations omitted).

*Reaction Molding Technologies, Inc.*, 588 F.Supp. at 1288.

  *See also Steiner v. Mobil Oil Corp.*, 20 Cal. 3d 90, 101, 141 Cal. Rptr. 157, 569 P.2d

751, 22 U.C.C. Rep. Serv. 865 (1977) (Holding that Defendant did not make his acceptance

"expressly conditional" on the plaintiff's "assent to the additional or different terms.").

  In this case, Gexpro purchased the Switches subject to Gexpro's Terms and Conditions of

Purchase.  (Schlutz; Decl. ¶ 10, Ex. A).  According to Barksdale's own declaration, Barksdale

fulfilled the orders and shipped the Switches while submitting "acknowledgment forms" which

referenced Barksdale's Standard Conditions of Sale. (Fuehr Decl. ¶¶ 11, 14).  Contrary to the

requirements of § 2-207(1) and the foregoing authorities, there is no evidence that Barksdale's

acceptance of Gexpro's purchases was made "expressly conditional" on Barksdale's additional

terms or that Barksdale would not have fulfilled the Order if Gexpro did not accept the

referenced terms and conditions.  Rather, at best, Barksdale's response was an acceptance which

proposed terms additional to or different than those agreed upon under § 2-207(1).  Therefore,

whether the forum selection clause is part of the parties' agreement turns to an analysis under §

2-207(2).

  **ii.  U.C.C. § 2-207(2)(a) and § 2-207(2)(b) Each Prevent the Forum Selection
       Clause from Becoming Part of the Contract Because Gexpro's Terms and
       Conditions of Purchase Limits Acceptance to its Terms and Conditions
       and the Forum Selection Clause Would Materially Alter the Contract.**

Under U.C.C. § 2-207(2), the additional terms become part of the contract unless (a), (b), or (c) apply.  In this case, both (a) and (b) of § 2-207(2) prevent the forum selection clause from becoming part of the contract.

With regard to § 2-207(2)(a), Gexpro's Terms and Conditions of Purchase "expressly limits acceptance to the terms of the offer":

> This document contains the complete and exclusive statement of the terms of the agreement between [Gexpro] and [Barksdale]. It supersedes all previous requests, quotations or oral agreements…Any additional or different terms will not be part of the Order unless acknowledged in writing and signed by an authorized representative of [Gexpro].

(Schlutz Decl. ¶ 10, Ex. A (¶ 1)).

Clearly, Gexpro limited its acceptance to its terms unless Barksdale's additional or different terms were "acknowledged in writing and signed by an authorized representative." However, there is no evidence that Gexpro ever acknowledged or assented to the additional or different terms referenced in Barksdale's "acknowledgment form."  In light of the lack of such evidence, Barksdale's Standard Conditions of Sale should not be unilaterally imposed.  *See Stemcor USA, Inc. v. Trident Steel Corp.*, 471 F. Supp. 2d 362, 369 (S.D.N.Y. 2006) (Holding that the seller's acknowledgment forms could not unilaterally impose additional terms without the purchasers assent because of the clear language in the purchase order limiting acceptance to the terms contained therein: "No terms or conditions, other than those stated herein, and no agreement or understanding in any way modifying the terms and conditions herein stated shall be binding upon purchaser, unless mutually agreed upon in writing."); *Tri-State Petroleum Corp. v. Saber Energy Inc.*, 845 F.2d 575 (5th Cir. 1988) (Affirming magistrate's conclusion "that Saber's

16

sending the contract to Tri-State was an offer. By signing the contract and returning it to Saber, Tri-State accepted Saber's offer, even though Tri-State added an "additional or different term"-- the cancellation clause--to the contract…That term did not become part of the contract, the magistrate concluded, because…Saber's offer limited acceptance to the express terms of the offer…");  *Egan Machinery Co. v. Mobil Chemical Co.*, 660 F. Supp. 35, 2 U.C.C. Rep. Serv. 2d 69 (D. Conn. 1986) (Finding that the purchase offer expressly limited acceptance to the terms of the offer when with the statement, "important--this order expressly limits acceptance to terms stated herein, and any additional or different terms proposed by the seller are rejected unless expressly agreed to in writing." As a result, the Court held that "the indemnity provision at issue here did not become a term of the contract"); *Lockheed Electronics Co. v. Keronix, Inc.*, 114 Cal. App. 3d 304, 311, 170 Cal. Rptr. 591, 30 U.C.C. Rep. Serv. 827 (2d Dist. 1981) ("Thus, under the above express terms of Keronix's offer, that order expressly limits acceptance to the terms stated therein, and the additional or different terms proposed by the seller were rejected because they were not expressly assented to in writing by the buyer. And, since Keronix's offer expressly limits acceptance to the terms of the offer, under section 2207(2)(a) the additional terms by LEC did not become part of the contract between the parties.").

Consistent with the foregoing authority, Gexpro's express limitation of acceptance to its terms and conditions prevents Barksdale's Standard Conditions of Sale, specifically the forum selection clause, from becoming part of the contract pursuant to U.C.C. § 2-207(2)(a) and Barksdale's Motion to Transfer should be denied.

Moreover, subsection (b) of U.C.C. § 2-207(2) also prevents the forum selection clause from becoming part of the contract because it would "materially alter" the parties' agreement.

17

Courts have consistently held that a forum selection clause materially alters an agreement. S*ee General Instrument Corp. v. Tie Mfg., Inc.*, 517 F.Supp. 1231, 1235 (S.D.N.Y. 1981) (In finding that the forum selection clause in seller's acknowledgment form materially altered the parties agreement, the Court stated, "The bench and bar has always regarded choice of forum as a significant right. The Court, as a matter of common sense would regard the injection of a choice of forum clause as a proposal for a material alteration in the contract"); *Compass Auto. Group., LLC v. Denso Mfg. Tennessee, Inc.*, No. 12-10919, 2013 WL 655112, at *4 (E.D. Mich. Feb. 22, 2013); *Insteel Wire Products Co. v. Dywidag Sys. Int'l USA, Inc.*, No. 1:07CV641, 2009 WL 2253198, at *2 (M.D.N.C. July 28, 2009) (After examining several possible factual scenarios that could establish the basis of the contractual agreements between the parties, "the Court concludes that under none of the possible scenarios could the Forum Selection Clause contained in the Sales Order Acknowledgment have become a term of the parties' agreements.").

*See also Duro Textiles, LLC v. Sunbelt Corp.,* No. 13–10927–MLW, 2014 WL 1338149 (D.Mass. Mar. 31, 2014) (In holding that a forum selection clause that was part of an invoice sent by the seller to the buyer was a material alteration of the parties' contract under the UCC, the Court noted that the "conclusion that a forum selection clause materially alters a contract has also been reached by various other courts under the laws of various other jurisdictions.") (citing the following cases: *Metro. Alloys Corp. v. State Metal Indus., Inc.*, 416 F. Supp. 2d 561, 565-67 (E.D. Mich. 2006), *Prod. Comp'ts., Inc. v. Regency Door & Hardware, Inc.*, 568 F. Supp. 651, 654 (S.D. Ind. 1983), *Galaxy Int'l, Inc. v. White Stores, Inc.*, 88 F.R.D. 311, 321 (W.D. Pa. 1980), *TRE Servs., Inc. v. U.S. Bellows, Inc.*, Civ. No. 12-00663, 2012 WL 2872830 (W.D. Pa. July 12, 2012), *Tra Indus., Inc. v. Valspar Corp.*, Civ. No. 10-026-JLQ, 2010 WL 2854251 (E.D.

18

Wash. July 19, 2010), *Saint Francis Home Med. Equip., L.L.C. v. Sunrise Med. HHG, Inc.*, Civ.

No. 08-224-TCK-PJC, 2009 WL 2461327 (N.D. Okla. August 10, 2009)); s*ee also Lively v.*

*IJAM, Inc*., 2005 OK CIV APP 29, 114 P.3d 487, 493 (Okla. Ct. App. 2005) ("We agree with the

reasoning of these courts and find that a forum selection clause materially altered the contract

between Defendants and [Plaintiff]. Therefore, we find that the forum selection clause was not

part of that contract.") (cases cited therein).

   Similarly, in *Construction Resource Group, Inc. v. General Technologies., Inc.,* No.

7:13–1695–TMC, 2013 WL 6284003 (D.S.C. Dec.4, 2013), the district court addressed whether

a forum selection clause included in the terms and conditions on the back of an invoice was a

term of the contract. Plaintiff had placed multiple orders with defendant, and the invoices for the

orders contained the same language. The court noted that it had not found any South Carolina

case, but stated that "several courts from other jurisdictions have held a forum selection clause

constitutes a material alteration." *Id.* at *3 (cases cited therein). Relying on the precedent from

other jurisdictions, the district court concluded that South Carolina courts would rule, based on

the facts of the case, that "a unilateral addition of a forum selection clause to a contract governed

by the UCC is a material alteration of the contract that does not become part of the contract." *Id.*

The court held that the forum selection clause at issue was not a part of the parties' contract. *Id.*

   Because a forum selection clause, as an additional term, has consistently and repeatedly

been found to constitute a material alteration of any contract, the forum selection clause in

Barksdale's Standard Conditions of Sale did not become part of the parties' agreement and is not

enforceable in this case.  Accordingly, the Motion to Transfer based upon Barksdale's forum

selection clause should be denied.

   **iii.  Even if Barksdale's Acceptance was Expressly Conditional on Gexpro's
        Assent to Barksdale's Standard Conditions of Sale under § 2-207(1), the**

19

**Forum Selection Clause Still Did Not Become Part of the Contract Because The Writings Do Not Agree On That Clause And Gexpro Never Assented to Such Terms.**

To the extent this Court determines that § 2-207(2) does not apply because Barksdale's acceptance of Gexpro's orders was "expressly made conditional on [Gexpro's] assent to the additional or different terms" in Barksdale's Standard Conditions of Sale under § 2-207(1), then, at most, Barksdale's Standard Conditions of Sale constitute a non-binding counteroffer. Given that both parties' actions clearly recognize the existence of a contract, the question would then turn to subpart (3) of § 2-207, which states that the parties' contract would consist of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of the Uniform Commercial Code. *See* Neb. U.C.C. § 2-207(3).

The record shows that Gexpro's Terms and Conditions of Purchase do not agree with Barksdale's Standard Conditions of Sale on a forum selection clause. In fact, Gexpro's Terms and Conditions of Purchase do not even include a forum selection clause. (Schlutz Decl. ¶ 10, Ex. A). Moreover, there is no evidence that Gexpro ever expressly assented to the referenced Barksdale's Standard Conditions of Sale in the purchase of the Switches or even recognized those terms and conditions in any way. Gexpro's acceptance of and payment for the Switches is not sufficient to establish assent to the additional terms and conditions. *See PCS Nitrogen Fertilizer, L.P. v. Christy Refractories, L.L.C.*, 225 F.3d 974, 980 (8th Cir. 2000) ("[M]ere acceptance of and payment for goods does not constitute acceptance of all the terms in the seller's counter-offer.") (citing *Ralph Shrader, Inc. v. Diamond Int'l Corp.*, 833 F.2d 1210, 1215 (6th Cir. 1987) (rejecting argument that buyer implicitly assented to counter-offer, given buyer's acceptance of and payment for goods); *Diamond Fruit Growers, Inc. v. Krack Corp.*, 794 F.2d 1440, 1444-45 (9th Cir. 1986) (refusing to equate assent with the acceptance of goods and payment for them, because this would in effect reinstate the common law rule that § 2–207 was

20

designed to abolish); *C. Itoh & Co. (America) v. Jordan Int'l Co*., 552 F.2d 1228, 1236 n. 8 (7th Cir. 1977), 552 F.2d at 1236 n. 8 (adopting view that, with no other actions by the parties, mere acceptance and payment does not establish assent)).

The record before this Court is devoid of the "specific" assent needed for Barksdale's Standard Conditions of Sale to become part of the contract.  "[S]pecific and affirmative assent to the seller's counter-offer is necessary to create a contract." *PCS Nitrogen Fertilizer, L.P*, 225 F. 3d at 980 (citing *JOM, Inc. v. Adell Plastics, Inc*., 193 F.3d 47, 53 (1st Cir. 1999) (en banc) (if seller makes its acceptance "expressly conditional", "the invoice is merely a counteroffer, and a contract is formed only when the buyer expresses its affirmative acceptance of the seller's counteroffer"); *Diamond*, 794 F.2d at 1444 (rejecting seller's argument that acceptance of goods and payment for them is equivalent to assent and mandating "specific and unequivocal assent" to terms of counter-offer); *Itoh*, 552 F.2d at 1235 (noting that buyer "never expressly assented to the challenged arbitration term")).

As Gexpro's Terms and Conditions of Purchase did not provide a forum selection clause and given that Gexpro did not specifically assent to Barksdale's Standard Conditions of Sale, even if this Court determines that Barksdale's acceptance of Gexpro's purchase order was "expressly made conditional" under § 2-207(1), the forum selection clause did not become a part of the parties' agreement under § 2-207(3) and the Motion to Transfer should be denied.

**III.   IF THE COURT FINDS THAT BARKSDALE'S STANDARD CONDITIONS OF SALE MAY BE PART OF THE PARTIES' AGREEMENT, THE COURT SHOULD NOT MAKE FACTUAL FINDINGS AT THIS JUNCTURE TO DETERMINE IF THE FORUM SELECTION CLAUSE IS APPLICABLE.**

In this case, the parties have conflicting positions on the formation of the contract and the controlling terms and conditions of that contract.  As articulated above, Reinke maintains that Barksdale's Standard Conditions of Sale were not part of the parties' agreement.  To the extent

this Court does not agree with Reinke's position, then, at most, there are a number of factual determinations that need to be made regarding the formation and contents of the parties' contract.  Because that determination goes to the merits of the case and given the limited facts before the Court at this juncture of the case, Barksdale's Motion to Transfer should be denied.

Other courts presented with similar circumstances have found that this stage of the proceeding is not the appropriate time to make such determinations.  In the case of *Nebraska Mach. Co. v. Cargotec Solutions, LLC*, 762 F.3d 737 (8th Cir. 2014), the purchaser had sent the seller a purchase order which contained an indemnification and arbitration provision.  In response, the seller had sent the purchaser an invoice with additional terms and conditions that did not contain any indemnification or arbitration provisions.  *Id*. at 738-39.  When losses associated with the purchased items occurred, the purchaser filed a demand for arbitration against the seller in Kansas based on the arbitration provision in the purchaser's purchase order. *Id*. at 739.  In response, the seller commenced an action in the United States District Court for the District of Nebraska seeking a declaration that the arbitration and indemnification provisions were improper.  *Id*.  The seller then moved to dismiss the arbitration proceedings alleging that the purchaser's arbitration and indemnification provisions did not become part of the contract for the sale of goods.  *Id*.  In response, the purchaser moved to compel arbitration.  *Id.*

The magistrate judge analyzed whether the arbitration and indemnification provisions became part of the parties' agreement under the Uniform Commercial Code.  *Id*.  After analyzing two possible scenarios of the transaction based on the evidence, the magistrate judge determined that the U.C.C. did not require the seller to arbitrate under the circumstances.  *Id*. at 740.

On a de novo review of the magistrate judge's order, the district court determined that the agreement between the parties consisted of only the purchase, sale, and payment for the goods.

*Id*. Accordingly, the district court judge found that the parties were not contractually required to arbitrate or indemnify. *Id*.

On appeal, the 8th Circuit disagreed with the district court's determination that "'there are no facts to try' because '[e]verything has been submitted to the court.'" *Id*. at 742. As the 8th Circuit explained, "there were facts left to try, namely determining which side was credible and resolving the factual disputes surrounding the documents the parties actually sent and received." *Id*. The 8th Circuit held that "issues of fact precluded proper application of the U.C.C" and remanded the case back to the district court for a trial to resolve the factual issues concerning the making of the contract. *Id*. at 743-744.

Similarly, in the case of *Valmont Indus., Inc. v. Mitsui & Co. (U.S.A.)*, 419 F.Supp. 1238 (D. Neb. 1976), the plaintiff brought an action for beach of alleged warranties and non-conforming goods under the contract. In the initial negotiations for the purchase at issue, the plaintiff sent the defendant a purchase order which did not contain an arbitration clause. *Valmont Indus., Inc.*, 419 F.Supp. at 1239. In response, a confirmation of sale was returned by the defendant which provided that any disputes would be resolved by arbitration. *Id*. After the plaintiff filed suit in the District Court of Nebraska, the defendant moved to stay the action pending arbitration in accordance with the terms of the confirmation. *Id*.

The Court explained, "[s]ince the plaintiff's purchase order did not expressly limit acceptance to the terms of the offer pursuant to Subsection (a) [U.C.C. § 2-207(2)], and the plaintiff did not give any notification of objection pursuant to Subsection (c), the determinative issue herein is whether the addition of the arbitration provision in defendant's confirmation materially altered the terms of the plaintiff's purchase order." *Id*. Given the limited facts before the Court at that juncture of the case, the Court denied the defendant's motion to stay stating,

23

"the facts surrounding the transaction in question have not yet been fully developed by the parties. If further discovery reveals new matters relevant to this inquiry, the Court will reconsider the defendant's motion to stay." *Id*. at 1240.

A similar result was very recently reached by the United States District Court of Wisconsin in *Michels Corp., v. Resitech Indus., LLC*, 15-C-0535 (D. Wis. Aug. 19, 2015).  In that case, the plaintiff initially filed suit in state court for breach of a sale contract for industrial cable.  After the defendant removed the case to federal court, the plaintiff moved to remand the case to state court on the basis of a forum selection clause that appeared in plaintiff's purchase order.  The defendant argued that the forum selection clause was not part of the contract at issue, despite evidence that the defendant had signed the purchase order.  In denying plaintiff's motion to enforce the forum selection clause and remand to the state court, the Court stated:

> [Plaintiff's] motion to remand calls for me to make a number of factual determinations relating to the formation and contents of the parties' contract, such as that [defendant] signed [plaintiff's] purchase orders and that [defendant's] sales orders did not contain or reference [plaintiff's terms and conditions]…because questions relating to the formation and contents of the parties' contract go to the merits of the case, I conclude that [defendant] should be afforded an opportunity for discovery.

In the record before this Court, Reinke maintains that the evidence establishes that Barksdale's Standard Conditions of Sale were not part of the contract between Gexpro and Barksdale.  However, to the extent this Court finds differently, this Court should not make factual determinations regarding the formation and contents of the parties' contract at this juncture of the case.  *See Pax, Inc. v. Veolia Water N. Am. Operating Servs., Inc.*, 347 F. Supp. 2d 281, 284 (W.D. Va. 2004) (In denying a 28 U.S.C. § 1404(a) motion to transfer, the Court

24

stated, "The main problem with the movants' argument is that whether this forum selection clause is a binding term of the contract between Supplier and Contractor is disputed and the present record does not contain sufficient facts for the court to determine that question, particularly considering that the burden of proof is on the movants."); *Neb. Plastics, Inc*, *v. Holland Colors Americas, Inc.*, No. 4:01CV603, 2002 WL 1477635, at *3 (D. Neb. July 10, 2002) (In denying the defendant's motion to transfer, the Court declined to factor a forum selection into its §1404(a) transfer analysis because the Court was "not persuaded that the document containing the forum selection clause [was] an enforceable contract, or part of an enforceable contract" despite Plaintiff's controller having signed the alleged contract.).

For these reasons and in accord with the foregoing authorities, Reinke respectfully requests that the Court deny Barksdale's Motion to Transfer.

## IV.   BARKSDALE HAS FAILED TO SUSTAIN ITS BURDEN OF PROVING THAT CALIFORNIA WOULD BE A *MORE* CONVENIENT FORUM THAN NEBRASKA FOR THE PARTIES, THE WITNESSES, AND IN THE INTERESTS OF JUSTICE.

The ability of this Court to transfer this case to another district is governed by 28 U.S.C. § 1404(a). *Terra Intern., Inc. v. Mississippi Chemical Corp.*, 119 F.3d 688, 691 (8th Cir. 1997). Section 1404(a) provides: "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).

The court must consider "the convenience of the parties, the convenience of the witnesses, there interests of justice, and any other relevant factors when comparing alternative venues." *Terra Intern.,* 119 F.3d at 696.  Other factors to consider include the willingness of witnesses to appear, the ability to subpoena witnesses, the adequacy of deposition testimony, the accessibility to records and documents, the location where the conduct complained of occurred,

25

the applicability of each forum state's substantive law.  *Id.*  The Court should also consider

judicial economy, the plaintiff's choice of forum, the comparative costs to the parties of litigating

in each forum, each party's ability to enforce a judgment, obstacles to a fair trial, conflict of law

issues, and the advantages of having a local court determine questions of local law.  *Id.*

In light of this standard, Barksdale has failed to carry its burden of demonstrating that

transfer is appropriate.  The evidence submitted fails to establish that the applicable factors

weigh strongly enough in favor of transfer.  Thus, the Motion should be denied.

In this case, Reinke has chosen a Nebraska forum.  This choice of forum should be given

considerable deference.  *See Id.* at 695 ("In general, federal courts give considerable deference to

a plaintiff's choice of forum and thus the party seeking transfer under section 1404(a) typically

bears the burden of providing that a transfer is warranted.") *see also Medicap Pharmacies, Inc. v.

Faidley*, 416 F. Supp. 2d 678, 686 (S.D. Iowa 2006) ("The burden is upon the party seeking

transfer to 'make a clear showing that the balance of interests weighs in favor of the proposed

transfer, and unless that balance is strongly in favor of the moving party, the plaintiff's choice of

forum should not be disturbed.'"); *Houk v. Kimberly-Clark Corp.*, 613 F. Supp. 923, 927 (W.D.

Mo. 1985) ("In any determination of a motion to transfer under §1404(a), the plaintiff's choice

of a proper forum is entitled great weight, and will not be lighted disturbed"); *Shutte v. Armco

Steel Corp.*, 431 F.2d 22, 25 (3rd Cir. 1970) ("It is black letter law that a plaintiff's choice of a

proper forum is a paramount consideration").

Moreover, the convenience of the parties and witnesses do not favor transfer.  Reinke is

headquartered in Deshler, Nebraska.  (Roth Decl. ¶ 3).  The orders placed by Reinke to Gexpro

for the Switches were originated from Reinke's offices in Nebraska to Gexpro's Omaha,

Nebraska Branch Office.  (Schlutz Decl. ¶ 15).  The orders placed by Gexpro to Barksdale for

26

the Switches were originated by Gexpro to Barksdale from Gexpro's Omaha, Nebraska Branch Office.  (Schlutz Decl. ¶ 16).  Barksdale shipped the Switches to Gexpro in Nebraska.  (Fuehr Decl. ¶14).  After receiving the Switches from Gexpro, the Switches were incorporated into Reinke's manufactured irrigation systems in Deshler, Nebraska.  (Roth Decl. ¶ 4; Compl. ¶ 8).  Reinke's personnel including sales personnel, quality control, accounting personnel are located in Nebraska.  (Roth Decl. ¶ 14).  All of Reinke's correspondence, contracts, service records, accounting and other documents relating to the replacement of the Switches are located in Nebraska.  (Roth Decl. ¶ 13).  If the case is transferred to California, Reinke will be inconvenienced.  Merely shifting the inconvenience from one side to the other, however, is obviously not a permissible justification for a change of venue.  *Terra Intern.,* 119 F.3d at 696-97.  *See also Dayton Power & Light Co. v. East Kentucky Power Coop., Inc.,* 497 F. Supp. 553, 555 (D. Ky. 1980) ("transfer which would simply shift the inconvenience from one side to another should not be granted") (citations omitted).

In support of its allegation that California would be the most convenient forum, Barksdale has identified three former employees with information concerning the manufacture and sale of the Switches and the safety notification letter sent to Reinke.  Contrary to Barksdale's contentions, events relating to the manufacture and sale of the Switches and the safety notification letters that Reinke received are not at issue or material in this lawsuit.  The basis of this action is the recovery of costs incurred in recalling defective Switches.  Barksdale's conduct of recalling and replacing these Switches unequivocally proves the defective nature of the Switches.  This lawsuit would not exist and Reinke would not have undertaken the recall if Barksdale would not have told Reinke that the Switches were defective.  (Roth Decl. ¶¶ 4, 8).

Accordingly, the material witnesses in this dispute are not those with information regarding the recall notification letters or the manufacturing and sale of the Switches.

The material information and conduct at issue in this lawsuit is Reinke's replacement of the defective Switches, including but not limited to the accounting records that document the costs of replacing the Switches; these documents, along with all of Reinke's records relating to this dispute, are located in Reinke's Headquarters in Deshler, Nebraska.  (Roth Decl. ¶ 13).  The material and important witnesses in this dispute will be the following Reinke employees: Chris Roth, President; Larry Fuglestad, Purchasing Director; Dale Carmine, Electrical Engineering Manager; Brad Weatherl, Manager Irrigation Engineering; Todd Merryman, Technical Support Manager; and Shana Gerberding, Irrigation Warranty Administrator,  all of whom reside and work in Nebraska.  (Roth Decl. ¶ 10).  Additionally, former Reinke employee and Vice President, Engineering, John Davis would be a material and important witness in this dispute; Mr. Davis resides in Nebraska.  (*Id*.).  Mr. Davis, Mr. Carmine, Mr. Weatherl, Mr. Merryman and Mr. Fuglestad each have knowledge and information relating to defects in the Switches, the discussions at the December 13, 2012 meeting at Reinke's Headquarters in Deshler, Nebraska regarding the defective Switches and the plan for replacement of the Switches.  (Roth Decl. ¶ 11).  Mr. Fuglestad, and Ms. Gerberding and Mr. Roth each have knowledge and information relating to the costs of replacing the Switches.  (Roth Decl. ¶ 12).

Additionally, non-party Gexpro employees, Dan Bilka, Dan Jacobson, and Cheryl Schlutz, with whom Reinke representative dealt in connection with the purchase of the Switches, and coordinated with in the effort to recall these Switches, are located in Nebraska.  (Roth Decl. ¶ 15).  Moreover, the Gexpro sales personnel responsible for the sales of the Switches to Reinke were and are located in Gexpro's Omaha, Nebraska office.  (Schlutz Decl. ¶ 14).

28

In support of its contentions that California is the most convenient forum, Barksdale has also identified three current employees as potential witnesses. As articulated above, however, the material witnesses and information relevant to this case will not be from Barksdale, but testimony and information relating to Reinke's recall efforts and such costs incurred. Notwithstanding, even if testimony is necessary from these employees, Barksdale should have no difficulty in compelling them to testify. *See*, *Anderson v. Century Products Co.*, 943 F. Supp. 137, 149 (D.N.H. 1996) (Defendant will probably be able to convince its employees to travel in order to present their testimony at trial); s*ee also*, *Sterling Novelty Inc. v. Smith*, 700 F. Supp. 408, 410 (N.D. Ill. 1988). Additionally, two of the three Barksdale employees identified as potential witnesses are located in Illinois, not California. (Fuehr Decl. ¶ 15(b)(ii-iii)).

Finally, Barksdale suggests two Honeywell employees, one located in California and one located in North Carolina, who may have information concerning the Switches. (Fuehr Decl. ¶ 15(c)). Again, there is no dispute over the defective nature of the Switches, making the involvement of these individuals in this matter largely irrelevant. Clearly, Nebraska is the central nexus for the majority of important witnesses and documentation.

In the case of *Rolscreen Co. v. Pella Products of St. Louis, Inc.*, 64 F.3d 1202 (8th Cir. 1995), the defendant appealed the district court's denial of its motion to transfer the case from Iowa to Missouri. The defendant argued that transfer was appropriate because the majority of witnesses and records were in Missouri, Missouri law applied to most of the claims, and it was less able to afford litigation in a foreign forum. The Eighth Circuit affirmed the denial of transfer because the plaintiff was headquartered in Iowa, brought suit in its home state and the burden on the defendant and its witnesses was not particularly onerous. *Id*. at 1208-09.

29

Similarly, in this case, Reinke is headquarter in Nebraska, brought suit in its home state, and, while no forum will be entirely convenient for all the parties or witnesses, the evidence establishes that Nebraska is the most convenient forum.

Additionally, Barksdale has not demonstrated that the additional factors regarding the interests of justice support a transfer.  In fact, Barksdale's only argument in this regard is that time to trial is shorter in the Central District of California compared to that of the District of Nebraska.  While California courts may, on average, dispose of a civil case two months faster, this factor should be given minimal consideration.  *See Houk v. Kimberly-Clark Corp.*, 613 F.Supp. 923, 932 (W.D.Mo. 1985) ("[T]his factor would be of little weight, absent a truly exceptional disparity which might exist between the two dockets.") (citation omitted).

As provided in Argument Section I above, with regard to the conflict of law issues, the evidence establishes that Nebraska law should apply.  While not argued by Barksdale in support of the Motion to Transfer, even if this Court were to later determine that Barksdale's Standard Conditions of Sale are applicable in this lawsuit and the California choice of law provision is applied, this Court is capable of interpreting and applying another state's common law.  *See Houk*, 613 F.Supp. 923 at 932 ("[T]he general view, one to which this court ascribes, is that this factor is to be given little weight where, as appears to be the case here, the foreign law to be applied is neither complex or unsettled.") (citations omitted).

None of the other factors, including comparative costs to the parties of litigating in each forum, each party's ability to enforce a judgment, or obstacles to trial, favor transfer of this case to California.

Based upon a review of the foregoing factors, it is clear that Barksdale has failed to satisfy its burden of establishing that the statutory elements and additional factors favor transfer.

As the District of Nebraska is the most appropriate venue for this action, Defendant's Motion to Transfer should be denied.

## CONCLUSION

Based on the foregoing, Plaintiff, Reinke Manufacturing Company, Inc., respectfully requests that the Court deny Defendant's Motion to Transfer.

DATED this 2nd day of November, 2015.

**REINKE MANUFACTURING
COMPANY, INC.**, Plaintiff,

By:    /s/ Paul M. Schudel
           Paul M. Schudel, No. 13723
           Todd W. Weidemann, No. 20505
           Ryan A. Kehm, No. 25121
           WOODS & AITKEN LLP
           301 South 13th Street, Suite 500
           Lincoln, Nebraska 68508
           Telephone:  402-898-7400
           Facsimile:  402- 898-7401
           pschudel@woodsaitken.com
           tweidemann@woodsaitken.com
           rkehm@woodsaitken.com
           *Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 2nd day of November, 2015, a true and correct copy of the above and foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all parties' counsel of record.

           /s/ Ryan A. Kehm