IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| REINKE MANUFACTURING COMPANY, INC.,<br><br>                Plaintiff,<br><br>vs.<br><br>BARKSDALE, INC.,<br><br>                Defendant. | 4:15CV3072<br><br>**MEMORANDUM AND ORDER** |

      This matter is before the court on Defendant Barksdale, Inc.'s motion to transfer venue from this court to the United States District Court for the Central District of California or, alternatively, the Southern District of New York. ([Filing No. 15](#)). For the reasons set forth below, the motion will be denied.

## BACKGROUND

      Plaintiff's complaint alleges six claims for relief, including a breach of contract action against Defendant Barksdale Company, Inc. ("Barksdale"). ([Filing No. 1](#)). Plaintiff Reinke Manufacturing Company, Inc. ("Reinke") is a Nebraska corporation with its principal place of business in Deshler, Nebraska. Barksdale is a corporation with its primary place of business in Los Angeles, California. Barksdale manufactures control switches used in industrial applications. These switches are sold by Barksdale to authorized suppliers, including Gexpro, who then sells them to a buyer.

      In February of 2011, Daniel Bilka, a Gexpro employee and sales representative for Reinke, sent an email to a sales manager at Barksdale requesting information regarding Barksdale's returns, credits, and warranty policies. Barksdale responded and attached a copy of Barksdale's General Sales Policy (the "Policy"). The Policy discusses Barksdale's returns and credits, but it does not discuss warranties. Instead, at the bottom

of the Policy it states: "In addition to [the Policy], all orders are subject to the Standard Conditions of Sale." ([Filing No. 19-1 at CM/ECF p. 9](#)). The Standard Conditions of Sale ("Barksdale Conditions") include Barksdale's warranty policy and a forum-selection clause which states, "[a]ny disputes arising between the parties as to any aspect of this transaction shall be filed in a court of competent jurisdiction in Los Angeles, California and shall be governed by California law (except that any conflict of laws provision therein shall not be applicable)." ([Filing No. 19-1 at CM/ECF p. 11](#)). A copy of the Barksdale Conditions was not attached in the email response.

From February 18, 2011 to October 18, 2012, Gexpro placed orders for switches to Barksdale. When making purchases, Gexpro utilized purchase orders which incorporated Gexpro's Terms & Conditions of Purchase ("Purchase Terms"). Gexpro's Purchase Terms include a merger clause which provides:

> This document contains the complete and exclusive statement of terms of the agreement between [Gexpro] and [Barksdale]. . . . If [Barksdale] accepts this Purchase Order ("Order") or provides any items listed in the Order, [Barksdale] is deemed to have agreed to these conditions. Any additional or different terms will not be part of the Order unless acknowledged in writing and signed by an authorized representative of [Gexpro].

([Filing No. 28-2 at CM/ECF p. 4](#)). The Purchase Terms also contained a clause regarding warranties, stating:

> Seller warrants that the products are new and covered by the manufacturer's warranty, which will be extended to [Gexpro] and/or the Buyer's customer. Seller also warrants that the products and services sold will be free from defects in material, workmanship, and title and will conform to the requirements of this Order for a period of at least twelve (12) months from the date of shipment . . . .

([Filing No. 28-2 at CM/ECF p. 4](#)). The Purchase Terms did not contain a forum selection clause. Barksdale claims Gexpro did not include its Purchase Terms in "many" of its orders including Gexpro's initial orders placed with Barksdale.

Barksdale acknowledged each of Gexpros's orders by fax or email with an order acknowledgment form attached. Barksdale's order acknowledgment form stated orders were subject to the Barksdale Conditions. (Filing No. 19-1 ¶ 11 at CM/ECF p. 3).

Barksdale shipped the ordered switches to Gexpro in Nebraska. After receiving the switches, Gexpro sold them to Reinke. In its sale documents to Reinke, Gexpro included its Seller's Terms and Conditions of Sale ("Seller Terms"). Among the Seller Terms was an assignment to Reinke of all warranties and remedies provided to Gexpro by Barksdale. Gexpro did not provide independent product warranties to Reinke.

Reinke incorporated the Barksdale switches into Reinke's irrigation systems. Reinke then sold the systems to dealers worldwide. Approximately 5,831 systems with Barksdale switches were installed in the United States, and 514 were installed outside of the United States.

On September 24, 2012, Barksdale sent to Gexpro and Gexpro forwarded to Reinke an "Interim Corrective Action Report," stating Barksdale was investigating the switches because of cracks along the rim of a plastic knob on the switches. In December of 2012, Barksdale issued an Important Product Notification, warning that the cracks in the switches could expose the operator to full line voltage and electrical shock, possibly resulting in serious injury or death. Barksdale required the users to return any defective controls. Barksdale representative Jeremy Smith travelled to Reinke's headquarters in Nebraska and held a meeting to discuss the severity of the risk. A recovery plan to recall and replace the defective switches was formulated.

Reinke had installed 6,345 switches throughout the world that required replacement. (Filing No. 1 ¶ 12 at CM/ECF p. 3). Reinke undertook efforts to replace

the switches, incurring substantial costs for which it seeks indemnification. As of March 31, 2015, Reinke replaced 94.5% of the defective switches installed in the United States at a cost of $847,261.90.

Before this lawsuit, Reinke served a demand on Gexpro for recovery of the replacement costs. In response, Gexpro contacted Barksdale, stating Barksdale had entered into Gexpro's "standard Indemnification Agreement" which "govern[s] all . . . purchases by [Gexpro] from [Barksdale.]" (See Filing No. 17 at CM/ECF p. 10). Barksdale interpreted Gexpro's statement as a reference to an Indemnification Agreement that Barksdale entered into with GE Supply before Gexpro acquired that company. This Indemnification Agreement contains a forum-selection clause that reads:

> Any litigation arising from this Agreement may be brought only in the United States District Court for the Southern District of New York or, if such court lacks subject matter jurisdiction, in the Supreme Court of the State of New York in and for New York County. The Parties hereby submit to the jurisdiction of said courts, and waive any defense of forum non conveniens.

(See Id.).

ANALYSIS

Section 1404(a) provides, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C.A. § 1404(a). A typical analysis under § 1404(a) requires the district court to balance a number of case-specific factors. Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for Western Dist. of Texas, 134 S.Ct. 568, 581 (2013). When deciding motions to transfer a contract action, a valid forum-selection clause is a significant factor which figures centrally in the court's decision. Id. at 579.

A majority of Defendant's brief focuses on the forum-selection clause found in the Barksdale's Conditions which require transfer to a court of competent jurisdiction in Los Angeles. Applying that clause, Defendant argues this case should be transferred to the Central District of California. Plaintiff argues the Barksdale Conditions do not govern this lawsuit.

A district court should transfer the case to the forum identified in a valid forum-selection clause and deny such transfers under only extraordinary circumstances unrelated to the convenience of the parties. Atlantic Marine, 134 S.Ct. at 576, 581. But the court must find the Barksdale Conditions govern this lawsuit before determining whether the forum-selection clause stated therein requires transfer to a California court. The parties have conflicting positions on the contract formation, and the controlling terms and conditions. That is, a central dispute of this case is which contract terms govern.

Plaintiff and Defendant agree that if this court were to make a determination of the controlling contract terms, there are factual issues that create difficulty in properly applying the Uniform Commercial Code. See Nebraska Mach. Co. v. Cargotec Solutions, LLC., 762 F.3d 737, 743–44 (8th Cir. 2014). For example, the defendant argues Gexpro placed many orders with Barksdale before adding their Purchase Terms—that is, Gexpro's terms could not have been incorporated for those specific sales and cannot control. Since an analysis under the UCC is necessary to determine whether and to what extent the Barksdale Conditions, and specifically Barksdale's forum-selection clause applies to this case, and that analysis requires discovery of facts and possibly the resolution of factual disputes, a motion to transfer based on the Barksdale Conditions must be denied, without prejudice, until these factual determinations are made.[1]

---

[1] Defendant argues that a battle of the forms analysis is not necessary because the Barksdale Conditions should control as 'antecedent negotiations' due to the February

The case will remain in the District of Nebraska for discovery to be completed on the question of whether the forum selection clause in the Barksdale Conditions applies to the sale of switches by Barksdale to Gexpro. If appropriate, Defendants may refile to transfer venue after discovery on the venue issue is completed.

THE COURT HEREBY ORDERS:

1) Defendant's Motion to Transfer Venue, ([Filing No. 15](Filing No. 15)), is denied without prejudice.

2) To avoid delays in resolving the venue question, the parties' initial discovery efforts shall focus on gathering the facts needed to again place the venue issue before the court for decision.

Dated this 11th day of December, 2015

BY THE COURT:

*s/ Cheryl R. Zwart*
United States Magistrate Judge

---

2011 email. Even if the email could be construed as antecedent negotiations, the Purchase Terms stated it was "the complete and exclusive statement of terms of the agreement between [Gexpro] and [Barksdale]." This language would prevent any antecedent negotiations from being made part of the final contract. See [Farmers Mut. Hail. Ins. Co. v. Fox Turkey Farms, Inc., 301 F.2d 697 (8th Cir. 1962)](Farmers Mut. Hail. Ins. Co. v. Fox Turkey Farms, Inc., 301 F.2d 697 (8th Cir. 1962)).

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.